CV 13-2337

WEINSTEIN, J.

GOLD, M.J.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------

ANWAR ALKHATIB,
              Plaintiff,

v.

NEW YORK MOTOR GROUP LLC,
CAPITAL ONE AUTO FINANCE, INC., and
PLANET MOTOR CARS, INC.

              Defendants.

-------------------------------------------------------------

**COMPLAINT**

**AND JURY DEMAND**

## INTRODUCTION

1.     This is an action for money damages, injunctive relief, and declaratory judgment, brought by an individual consumer seeking redress for unlawful practices relating to an automobile transaction and setting forth Defendants' violations of the Truth In Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA"), New York General Business Law § 350, New York State Usury Law, and setting forth common law claims for Fraud, Breach of Contract, and Rescission/Mistake.

2.     Plaintiff Anwar Alkhatib brings suit based on the illegal, unfair, abusive and deceptive practices employed by Defendants regarding an automobile purchase made on December 18, 2012.

## JURISDICTION AND VENUE

3.     Jurisdiction is based on 15 U.S.C. § 1640 and 28 U.S.C. § 1337.

4.     The Court has authority to issue a declaratory judgment by virtue of 28 U.S.C. § 2201 and § 2202.

1

5. This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6. Venue in this District is proper under 28 U.S.C § 1391 because a substantial part of the events and omissions complained of took place in this District and Defendants maintain offices, transact business, and are otherwise found in this district.

## THE PARTIES

7. Plaintiff Anwar Alkhatib is a resident of Bergen County, New Jersey.

8. Defendant NY Motor Group LLC ("NYMG" or "Dealership") is a domestic limited liability company under the laws of New York, whose principal place of business is located in Woodside, New York in Queens County.

9. Defendant Planet Motor Cars, Inc. ("Planet Motor Cars") is a corporation incorporated under the laws of New York, whose principal place of business is located in Jamaica, New York in Queens County.

10. Defendant Capital One Auto Finance, Inc. ("COAF") is a corporation incorporated under the laws of the Commonwealth of Virginia, whose principal place of business is located in McLean, Virginia.

11. COAF is the assignee of a Retail Installment Contract between Plaintiff and NYMG, and therefore, is liable for all claims asserted against the Dealership under State and Federal law.

## FACTS

12. In December 2012, Plaintiff saw an advertisement on cars.com for a 2008 Honda Odyssey mini-van. ("the vehicle"). The advertisement offered the vehicle for sale for approximately $14,995.

2

13. On or about December 18, 2012, Plaintiff went to the Dealership and inquired about purchasing the vehicle.

14. Although the vehicle was advertised on cars.com for $14,995, the window sticker on the vehicle at the Dealership showed $16,995 as the sale price.

15. After negotiating with Alex, a Dealership salesperson, Plaintiff agreed to purchase the vehicle for the online advertised price of $14,995, and the Dealership agreed to sell it to him for that price.

16. Plaintiff then explained to the salesperson that he wanted to put down $10,000 cash and finance the remaining $4,995 of the sale price.

17. Upon hearing about such a large downpayment, Alex agreed to further reduce the sale price by $1,000, making the final agreed upon price $13,995.

18. Thereafter, Alex prepared a purchase invoice listing the sale price at $13,995.

19. Alex then told Plaintiff that he would have to return the next day to complete the transaction because it was 7:00pm and too late to finish the finance process.

20. The Dealership asked Plaintiff, however, to leave a $200 deposit to keep the deal open while they worked on the financing.

21. The Dealership refused to provide Plaintiff with a receipt for the $200 deposit, though Plaintiff requested one.

22. After some prodding from Plaintiff, the Dealership did provide a photocopy of a portion of a service invoice that reflected the $200 deposit.

23. On December 19, 2012, Plaintiff returned to the Dealership with $9,800 cash to complete the transaction.

3

24. Alex informed Plaintiff on that day that Plaintiff had to turn over all $9,800 before any loan application would be made on his behalf.

25. Mr. Alkhatib turned over the $9,800 cash and received a dealership receipt for the payment.

26. The Dealership then left Plaintiff to wait for approximately two hours before he was introduced to the finance representative of the dealership.

27. The finance representative informed Mr. Alkhatib that he had been turned down for credit by two banks, Chase and TD Bank, due to Plaintiff's poor credit rating.

28. Plaintiff was surprised to hear this, as he had never signed any loan application at that point.

29. Plaintiff immediately requested copies of the letters declining him credit, but the Dealership refused to provide any documents and instead promised that the banks would mail them directly to Plaintiff.

30. To date, Plaintiff has never received any letter from Chase or TD Bank declining his credit application.

31. The Dealership finance representative then told Plaintiff that due to his bad credit he would have to accept one of the two following options for financing the vehicle:

      i. Option 1 required an additional $4,500 processing fee, 15% APR, and a prepayment penalty for pay offs within the first 18 months.

      ii. Option 2 required an additional $1,750 processing fee, $2,700 for insurance purchased through the dealership, $3,000 for a service contract, and 10% APR.

4

32. Faced with two options that would drastically increase the cost of purchasing and financing the vehicle, Mr. Alkhatib indicated that he did not want to finance the vehicle and asked for his deposit back.

33. At that time the Dealership informed Mr. Alkhatib, for the first time, that as the financing process had already started, they could not cancel it without Plaintiff incurring a penalty of 35% of the cash price.

34. The Dealership also informed Mr. Alkhatib at that point that if he did cancel, the dealership would keep his entire $10,000 deposit, while Plaintiff would have to wait for a "collection company" to send him a refund after the 35% was taken.

35. Shocked by such an outrageous set of "options," Mr. Alkhatib then offered to pay cash for the full sale price of $13,995.

36. The Dealership, however, then informed Plaintiff that it was no longer possible to enter into an entirely-cash transaction and that if he wished to purchase the car at all, Plaintiff had to continue with financing through the dealership's "options."

37. At that point, it was after 7:00pm on a December evening and Mr. Alkhatib, a resident of Bergen County, NJ, was alone without a car in Woodside, Queens.

38. After being told that if he left without consummating a deal, he would forfeit nearly half of his $10,000 deposit without any guarantee of receiving the remainder, Plaintiff reluctantly agreed to go forward with "Option 2," which required additional charges of over $7,450.

39. The Dealership described all of these additional charges as "security conditions" required to obtain the loan.

40. Thereafter, the Dealership prepared a retail installment contract (RIC) and purchase agreement that failed to itemize these additional charges and merely inflated the agreed upon vehicle price to $21,457.50.

41. The loan and purchase documents also show additional charges of $350 for what are described as "Government Certificate of Title Fees."

42. The RIC indicates that the amount financed is $13,309.53, the finance charge is $4,034.67 and the APR is 10.76%.

43. The RIC indicates that Mr. Alkhatib will have to make total payments of $17,344.20, after putting down $10,000.

44. In sum, the RIC indicates that Plaintiff will have paid over $27,000 to purchase a used car advertised for $14,995.

45. The Service Contract and "Insurance" Agreement of "Option 2" were given to Plaintiff separately.

46. The "Insurance" was in actuality a "Theft Deterrent Product Protection," policy, which explicitly disclaimed "THIS PRODUCT DOES NOT ELIMINATE THE NEED FOR AN AUTOMOBILE INSURANCE POLICY."

47. Mr. Alkhatib questioned the Dealership regarding the insurance disclaimer, as they had promised he would not have to purchase any other insurance.

48. The Dealership, however, replied that that disclaimer only applied to the first six months, and after six months, it would transfer to complete coverage.

49. The dealership also promised that Plaintiff would receive his insurance card in the mail.

50. To date, Plaintiff has not received any insurance card in the mail, and has since purchased his own insurance.

51. Mr. Alkhatib was also given a copy of the written mandatory Service Contract for which he was charged $3,000.

52. The Service Contract indicated that the selling dealership was Planet Motor Cars at 16014 Hillside Avenue in Jamaica, NY.

53. The Service Contract also indicated that the vehicle purchase price was $20,000.00.

54. The Service Contract vendor was AUI Corp, 1250 Main Street, Suite 300 Napa, CA.

55. Shortly after the transaction, Mr. Alkhatib contacted Technology Insurance Company, Inc., the provider for the "Theft Deterrent" protection listed on the policy, to attempt to cancel the insurance.

56. Technology Insurance Company representatives, however, told Mr. Alkhatib that they had no record of him having a policy with them and could not assist him in cancellation.

57. Thereafter, Mr. Alkhatib wrote to New York Motor Group requesting cancellation of the policy.

58. To date he has not received any response from NY Motor Group.

59. Mr. Alkhatib also attempted to cancel the Service Contract he was forced to purchase.

60. Following the express instructions for cancellation listed on the contract, Mr. Alkhatib wrote to Planet Motor Cars, which is listed as the "selling dealer" on the contract, and requested cancellation, attaching a copy of the service contract.

61. To date, Mr. Alkhatib has not received any contact from that or any other dealership regarding the cancellation of the service contract.

62. After having put down $10,000 on the date of the initial transaction, Mr. Alkhatib has been making monthly payments to COAF towards pay off of a loan for $13,309.53 for the purchase of a vehicle advertised at $14,995.

63. At all relevant times Defendants acted willfully and in bad faith.

64. The unlawful actions described herein harmed Plaintiff.

## COUNT I
## TRUTH IN LENDING ACT, 15 §§1601 et seq. ("TILA")

65. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

66. Plaintiff's transaction as described herein was a consumer credit transaction within the meaning of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA"), and Federal Reserve Board Regulation Z, 12 C.F.R. part 226.

67. Defendants are creditors within the meaning of TILA and Regulation Z.

68. The increase in the cash price of the vehicle from the originally confirmed price of $13,995 is a "finance charge" as defined under TILA § 1605(a) and Regulation Z § 226.4(a).

69. The cash price increase of over $7,450 is attributable to items and charges that Plaintiff was required to pay incident to the extension of credit to Plaintiff, and is a "finance charge" as defined under TILA § 1605(a) and Regulation Z § 226.4(a).

70. As a result of Defendants' failure to properly include these and/or other fees and charges as finance charges, the sale price, finance charge, amount financed, and APR disclosed in Plaintiff's RIC are all materially misstated, in violation of TILA and Regulation Z. e.g. § 1638(a)(2) through (5) and §226.18(b), (d), (e), and (h).

71. Defendants have failed to provide Plaintiff with clear and conspicuous disclosures of the terms of the loan as required under TILA and Regulation Z. e.g. 15 U.S.C. § 1632(a), § 1638(a), and Regulation Z, e.g. 12 C.F.R. § 226.17(a)(1).

72. As a result of Defendants' incomplete, inaccurate, and materially misstated disclosures, Plaintiff has suffered actual damages, including but not limited to the over $7,450 in extras that Plaintiff did not want or need but was required to purchase as a condition of receiving financing.

73. Had Defendants provided complete and accurate disclosure of all terms, costs, finance charges and interest rates, Plaintiff would not have agreed to purchase the vehicle on the terms and conditions imposed on him by the Defendants and instead would have sought to purchase a vehicle without the unwanted and unnecessary warranties and additional charges imposed on him by the Defendants.

74. Additionally, had Defendants provided complete and accurate disclosure of all terms, costs, finance charges and interest rates, Plaintiff would have sought and obtained alternate, lower cost financing.

75. For all these reasons, Defendants are liable under TILA and Regulation Z (see, e.g. 15 U.S.C. §§ 1640 and 1641) for statutory damages, actual damages, attorney's fees, litigation expenses and costs, for a declaratory judgment that they have violated TILA and Regulation Z, and for such other or further relief as the Court deems appropriate.

## COUNT II
## VIOLATION OF NEW YORK CIVIL USURY LAWS

76. Plaintiffs repeat and re-allege and incorporate by reference the foregoing paragraphs.

77. Pursuant to General Obligations Law § 5-501, the legal rate of interest in New York is "six per centum per annum unless a different rate is prescribed in §14-a of the Banking Law." Section 14-a (1) provides: "The maximum rate of interest provided for in section 5-501 of the general obligations law shall be sixteen per centum per annum."

78. The Dealership is not a "national banking association," and therefore is not exempt from state usury laws under 12 U.S.C. §85.

79. The Dealership has obscured the actual rate of interest charged and the total amount financed by hiding additional interest as costs within the purchase.

80. In reality, the increase in the cash price of the vehicle and/or the cost of the additional mandatory products and charges are finance charges that should have been disclosed as such in the contract.

81. When these charges are added to the incomplete finance charge, the total finance charge is actually over $7,450 higher than reported, and the interest rate for this loan is well over 16%.

82. Pursuant to NYGOL § 5-501, the alleged interest is therefore usurious, and the creditor forfeits both principal and interest due on the transaction.

83. As a result of Defendants' violations, Plaintiffs are entitled to a declaratory judgment that their obligation to COAF, the assignee of the loan made by the Dealership, is void, and are entitled to damages in the amount of all principal, interest, fees and other charges paid on the auto loan to date.

## COUNT III
## FRAUD

84. Plaintiff re-alleges and incorporates by reference the foregoing paragraphs.

85. Defendants intentionally and fraudulently induced Plaintiff to enter into a retail installment contract requiring Plaintiff to borrow more than $7,450 than was originally agreed with the false representation that the vehicle could only be purchased and financed if Plaintiff purchased additional products required by the lender.

86. Plaintiff justifiably relied upon each of Defendants' misrepresentations of material facts, as a result of which he sustained losses and damages.

87. Had Plaintiff not been misled by Defendants, he never would have agreed to a vehicle purchase transaction obligating him to pay off a vehicle purchase cost that is more than $7,450 higher than agreed.

88. As a result of Plaintiff's reasonable reliance upon Defendants misrepresentations, Plaintiff has been damaged in an amount to be determined at trial and is entitled to actual and punitive damages, attorneys fees, and costs and expenses.

### COUNT IV
### NYGBL § 350 (Unlawful False Advertising)

89. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

90. Each of the acts and practices set forth above, also constitute violations of NYGBL § 350, which makes false advertising unlawful, independent of whether these acts and practices constitute violations of any other law.

91. This false advertising was committed in the conduct of business, trade, commerce or the furnishing of a service in this state.

92. Under NYGBL § 350, "false advertising" means "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual."

93. The Vehicle was advertised on www.cars.com for $14,995. And at the Dealership, the vehicle had a sticker price of $16,995. This online ad and the sticker price on the vehicle are "advertising," as defined by NYGBL§ 350.

11

94. Specifically, Defendants falsely advertised the vehicle's price because they hid the true cost to the consumer of purchasing the car. Defendants did so by increasing the sales price of the vehicle from the amount advertised by adding "mandatory" products, charges, and service contracts.

95. Defendants' placing an online ad with a listed price of $14,995 and placing a sticker price on the vehicle showing a price of $16,995, followed by a false negotiation in which Defendant represented to Plaintiff that the sale price would be reduced from $16,995 to the "bargain" price of $13,995, then followed by insisting that certain warranties and service contracts had to be purchased for thousands of dollars over and above the stated price in order to obtain financing, taken together, represent the Defendants' false advertising.

96. Defendants' false advertising was done knowingly and willfully and committed in bad faith.

97. As a result of Defendants' false advertising in violation of NYGBL § 350, Plaintiff suffered actual damages including but not limited to the cost of the warranties, "insurance," "processing fees," and service contracts that were not included in the advertised price but he was forced to purchase.

98. For these reasons, Plaintiff is entitled to injunctive relief (enjoining the false advertising practices described above), actual damages, three times the actual damages up to $10,000, costs and reasonable attorneys fees pursuant to NYGBL § 350-e.

### COUNT V
### RESCISSION/MISTAKE

99. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

100. As alleged herein (see Count of Fraud, *supra*) Defendants have committed fraudulent acts and made fraudulent representations to Plaintiff.

101. Based on Defendants fraud and misrepresentations, Plaintiff's execution of the Retail Installment Contract is founded upon material mistake.

102. As a result of Defendants' fraud and misrepresentations and Plaintiff's resulting material mistake, Plaintiff has sustained damages.

103. Because Plaintiff has consistently sought to resolve this dispute and receive a refund of all charges that were not disclosed to him until after the sale, there can be no claim of laches.

104. Plaintiff is ready, willing and able to restore the parties to the position each occupied prior to the execution of the subject agreements, providing that Defendants return all the money paid by Plaintiff in connection with this transaction and otherwise restore Plaintiff to the status quo ante.

105. Plaintiff has no remedy at law.

106. By reason of the foregoing, Plaintiff is entitled to a judgment rescinding and setting aside the Retail Installment Contract and Service Contract, and directing the return to them of all money paid in connection with this transaction.

## COUNT VI
## BREACH OF CONTRACT

107. Moreover, Defendants contracted with Plaintiff to provide insurance through the Dealership for $2,700 as under "Option 2" for financing the vehicle.

108. The insurance policy turned out to be "Theft Deterrent" protection.

109. After Plaintiff contacted Technology Insurance Company, Inc., the provider of the protection listed on the policy, to try and cancel the insurance, he was informed that they had no record of him having a policy with them, and could therefore not assist him in cancellation.

110. Despite the failure to provide Plaintiff with the insurance policy he bargained for, Defendants have not responded to Plaintiff's requests for cancellation of the policy.

111. Defendants have received the purchase price of the insurance policy and more, but Plaintiff has not received what he bargained for.

112. As a result of Defendants failure to deliver what they promised in exchange for a payment for the "Theft Deterrent" protection that has been received and retained, Defendants have breached their contracts with Plaintiff.

113. In addition, Plaintiff agreed to purchase the insurance on reliance of the Dealership's promise that he would not need to purchase any other insurance for the vehicle.

114. Dealership promised that Plaintiff would receive his insurance card in the mail. To date, Plaintiff has not received an insurance card in the mail.

115. Defendants have received the purchase price of the vehicle and more, but Plaintiff has not received what he bargained for and instead is obligated to pay for his own car insurance.

116. As a result of Defendants failure to deliver what they promised in exchange for an "insurance" payment that has been received and retained, Defendants have breached their contracts with Plaintiff.

117. As a result of Defendants' breach, Plaintiff has been damaged in the amount of more than $2,700 plus other amounts to be determined at trial, and is entitled to actual damages, attorneys fees, and costs and expenses.

WHEREFORE Plaintiff respectfully demands judgment against Defendants as follows:

a. On COUNT I, TRUTH IN LENDING ACT, 15 §§1601 et seq. ("TILA"), judgment against Defendants for statutory damages, actual damages, attorney's fees, litigation expenses and costs, declaratory judgment that they have violated TILA and Regulation Z, and such other or further relief as the Court deems appropriate;

b. On COUNT II, VIOLATIONS OF NEW YORK CIVIL USURY LAWS, declaratory judgment that Plaintiffs' obligation to TD Auto Finance, the assignee of the loan made by Defendants, is void, actual damages in the amount of all principal, interest,

fees, and charges paid and such other and further relief as the Court deems appropriate;

c. On COUNT III, FRAUD, judgment against Defendants, actual damages, punitive damages, costs and reasonable attorneys fees;

d. On COUNT IV, NYGBL § 350, judgment against Defendants, injunctive relief, actual damages, three times the actual damages up to $10,000, costs and reasonable attorneys fees pursuant to NYGBL § 350(e), declaratory judgment that Defendants' have engaged in false advertising and such other or further relief as the Court deems appropriate;

e. On COUNT V RESCISSION/MISTAKE, judgment rescinding and setting aside the Retail Installment Contract and service contract, and directing the return to Plaintiff of all money paid in connection with this transaction;

f. On COUNT VI BREACH OF CONTRACT, judgment against Defendants, actual damages, costs and reasonable attorneys fees;

g. Such other and further relief as law or equity may provide.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

Dated: April 17, 2013
New York, New York

Respectfully Submitted,

*[signature]*

Peter T. Lane, Esq.
Schlanger & Schlanger, LLP
*One of the Attorneys for Plaintiff*
9 East 40th Street, Suite 1300
New York, NY 10016
Ph: 914-946-1981, ext. 109
peter.lane@schlangerlegal.com

**Attorneys of Plaintiff**
Daniel A. Schlanger, Esq.
Peter T. Lane, Esq.
Schlanger & Schlanger, LLP
9 East 40th Street, Suite 1300
New York, NY 10016